UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ABS ENTERTAINMENT, INC., an Arkansas corporation, BARNABY RECORDS, INC., a California corporation, BRUNSWICK RECORD CORPORATION, a New York corporation and MALACO, INC., a Mississippi corporation, each individually and on behalf of all others similarly situated.<br><br>        Plaintiff,<br><br>        v.<br><br>CUMULUS MEDIA INC., a Delaware corporation; CUMULUS BROADCASTING LLC, a Nevada limited liability company; and DOES 1-10,<br><br>        Defendants. | Civil Action No.: 15-cv-06806<br><br>Judge:  PKC<br><br>Magistrate:  FM<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT**<br><br><br>**[DEMAND FOR JURY TRIAL]** |

Plaintiffs ABS Entertainment, Inc. ("ABS"), Barnaby Records, Inc. ("Barnaby"), Brunswick Record Corporation ("Brunswick") and Malaco, Inc. ("Malaco") (ABS, Barnaby, Brunswick and Malaco are sometimes collectively referred to as "Plaintiffs"), individually and on behalf of all other similarly situated owners of sound recordings, hereby complain and allege as follows:

<u>**PRELIMINARY STATEMENT**</u>

1.      This is a class action on behalf of owners of sound recording to obtain injunctive relief and monetary damages sustained by Plaintiffs and the Class because Defendants, through their actions to deliver music content through broadcast radio channels, HD radio channels, the Internet and mobile devices without consent of or licenses from Plaintiffs and the Class.  As a result of their pernicious, improper and illegal conduct, Defendants have reaped hundreds of millions of dollars that rightfully belong to Plaintiffs and the Class.

2.      Defendant Cumulus Media Inc. (through itself and its subsidiaries, including Cumulus Broadcasting LLC) (collectively, "Cumulus") is one of the leading operators in the United States of media and entertainment services via broadcast and digital delivery. Specifically, Cumulus delivers music content through broadcast (AM and FM) radio channels, HD radio channels, the Internet and its stations' websites, and through one or more Cumulus mobile applications on smart phones, tablets and consoles.  According to Cumulus, as of December 31, 2014, it owned approximately 460 domestic radio stations, servicing about 90 U.S. media markets, including 8 of the top 10 markets.  (Delivery by Cumulus of musical content through AM and FM radio stations shall hereafter be described as the "Broadcast Service"). Many of its stations in the Broadcast Service are the most popular music stations in the applicable market, including in New York City, where Cumulus owns and operates WPLJ – 95.5 FM, WPLJ-HD2, WNSH – 94.7 FM, and WNBM – 103.9 FM.

3.      Cumulus also streams to listeners the digital simulcast of the sound recordings being performed on its radio stations through the Internet and mobile application.  (Delivery by Cumulus of musical content through the Internet shall hereafter be described as the "Internet

1

Service").  The Broadcast Service and the Internet Service are sometimes referred to collectively as the "Music Service."

4.     Cumulus has not obtained performance rights licenses or paid public performance royalties to copyright owners of sound recordings of musical performances that initially were fixed (*i.e*., recorded) prior to February 15, 1972 ("Pre-1972 Recordings").  Sound recordings initially fixed on or after February 15, 1972 are subject to federal copyright protection under the United States Copyright Act and are not the subject of this lawsuit.

5.     Pre-1972 recordings comprise the historical backbone of the music industry.  From Tin Pan Alley to the Big Band era to the Summer of Love, those recordings have defined generations and include the recordings of legendary artists such as Al Green, Elvis Presley, Jackie Wilson, King Floyd, The Everly Brothers and The Beatles.

6.     Cumulus understands the value of Pre-1972 Recordings to its Music Service but has ignored the obligation to obtain licenses to exploit those recordings.  Instead, Cumulus has chosen to copy tens of thousands of Pre-1972 Recordings to its servers and to transmit, copy, perform, broadcast and stream them to its millions of users on a daily basis without any authorization.  By selling advertisements and through other means, Cumulus profits handsomely from its exploitation of Pre-1972 Recordings.

7.     New York common law provides protection for Pre-1972 Recordings from unauthorized reproduction, performance, distribution or other exploitation, and provides the owners of Pre-1972 Recordings the right to bring a claim for common law copyright infringement and a separate claim for unfair competition against parties who engage in such unauthorized actions.  A common law copyright infringement claim in New York consists of two elements:  (1) the existence of a valid copyright; and (2) unauthorized use, reproduction or other exploitation of the work protected by the copyright.  In addition to these two elements, a claim for unfair competition in New York requires competition in the marketplace or similar actions designed for commercial benefit or deception of the public.

2

8.    Because Cumulus has chosen to operate the Music Service without licenses for Pre-1972 Recordings, Cumulus is now liable under New York law for both common law copyright infringement and unfair competition for its unauthorized reproduction, distribution and public performance of those recordings.

## THE PARTIES

9.    ABS is a corporation duly organized and existing under the laws of Arkansas, with its principal place of business in West Memphis, Arkansas.

10.    Barnaby is a corporation duly organized and existing under the laws of California, with its principal place of business in Beverly Hills, California.

11.    Brunswick is a corporation duly organized and existing under the laws of New York, with its principal place of business in Islamorada, Florida.

12.    Malaco is a corporation duly organized and existing under the laws of Mississippi, with its principal place of business in Jackson, Mississippi.

13.    Through a series of transactions, ABS acquired the exclusive ownership in the sound recordings of Al Green, Willie Mitchell, Ann Peebles, Syl Johnson, Otis Clay, Bill Black Combo, and O.V Wright, a representative sample of the titles of which are specified on the attached Schedule "A1" and incorporated herein by reference (the "ABS Recordings").  ABS is the successor-in-interest to Cream Records and Hi Records and still markets and promotes certain of the ABS Recordings under those names.

14.    Through a series of transactions, Barnaby acquired the exclusive ownership in certain sound recordings of Andy Williams, Bill Hayes, the Crickets, Eddie Hodges, Jimmy Buffett, Johnny Tillotson, Julius LaRosa, Lenny Welch, Link Wray and His Ray Men, Marion Marlowe, Ray Stevens, The Chordettes, The Everly Brothers and other artists, a representative sample of the titles of which are specified on the attached Schedule "A2" and incorporated herein by reference (the "Barnaby Recordings").  Barnaby is the successor-in-interest to Cadence Records, and still markets and promotes certain of the Barnaby Recordings under that name.

15.    Through a series of transactions, Brunswick acquired the exclusive ownership in the sound recordings of Barbara Acklin, Gene Chandler, Jackie Wilson, The Artistics, The Chi-Lites, The Young-Holt Unlimited, Tyrone Davis and other artists, a representative sample of the titles of which are specified on the attached Schedule "A3" and incorporated herein by reference (the "Brunswick Recordings").

16.    Through a series of transactions, Malaco acquired the exclusive ownership in the sound recordings of King Floyd, Stefan Anderson, Mighty Sam, Mahalia Jackson, The Cellos, Eddie Bo, The Delroys, The Davis Sisters, The Ward Singers, The Roberta Martin Singers, Rev. James Cleveland and other artists, a representative sample of the titles of which are specified on the attached Schedule "A4" and incorporated herein by reference (the "Malaco Recordings"). Malaco is the successor-in-interest to Bess Music Company, Kenwood Records, Apollo Records and Savoy Records (Gospel) and still markets and promotes certain of the Malaco Recordings under those names.

17.    The ABS Recordings, Barnaby Recordings, Brunswick Recordings and Malaco Recordings are sometimes individually and collectively referred to as the "Recordings."

18.    Plaintiffs have been and continue to be engaged in the business of distributing, selling, and/or licensing the reproduction, distribution, sale, and performance of the Recordings including in records, audiovisual works, and for streaming (*i.e.*, performing) and downloading over the Internet.

19.    Cumulus Media Inc. is a corporation duly organized and existing under the laws of Delaware, with its principal place of business in Atlanta, Georgia.  Cumulus Media Inc. is the parent company of Cumulus Broadcasting LLC, and owns and operates the Music Service, which broadcasts music to its listeners and delivers high quality streams of music to its users.

20.    Cumulus Broadcasting LLC is a limited liability company duly organized and existing under the laws of Nevada, with its principal place of business in Atlanta, Georgia. Cumulus Broadcasting LLC is a wholly-owned subsidiary of Defendant Cumulus Media Inc.

21.     The true names and capacities, whether individual, corporate, associate or otherwise, of Defendants named herein as Does 1-10, are unknown to Plaintiffs who therefore sue said Defendants by such fictitious names.  Plaintiffs will amend this Complaint to allege their true names and capacities when such have been ascertained.  Upon information and belief, each of the Doe Defendants is responsible in some manner for the occurrences herein alleged, and Plaintiffs' injuries as herein alleged were proximately caused by such Defendants' acts or omissions.

22.     Plaintiffs are informed and believe, and on that basis allege, that at all times mentioned in this Complaint, Cumulus and each of the Doe Defendants was the agent of each other and, in doing the things alleged in this Complaint, was acting within the course and scope of such agency.

## JURISDICTION AND VENUE

23.     Jurisdiction exists pursuant to 28 U.S.C. § 1332(d)(2) because the matter in controversy exceeds the sum or value of $5 million (exclusive of interest and costs), it is a class action in which a member of a Class (defined in paragraph 46 below) is a citizen of a State different from Cumulus, and the number of members of the proposed Class exceeds 100.

24.     This Court has personal jurisdiction over Cumulus because:  (a) Cumulus is engaged in a continuing course of tortious conduct in New York by publicly performing, reproducing, and distributing Pre-1972 Recordings within the State of New York including, without limitation, through its broadcasting on its 10 owned and operated radio stations in New York; and (b) Cumulus's conduct causes injury to Plaintiffs and the Class and their intellectual property in New York.

25.     Venue in this District exists pursuant to 28 U.S.C. § 1391(b) and (c) because Cumulus is subject to personal jurisdiction in this District and because a substantial part of the events or omissions giving rise to the claims occurred in this District.  Specifically, Cumulus owns and operates at least 4 radio stations in the Southern District of New York that broadcast music to New York residents and digitally simulcasts their transmissions.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

26.     Plaintiffs' Pre-1972 Recordings are the product of a significant investment of time, effort, money and creative talent in creating, manufacturing, advertising, promoting, selling and licensing its recordings.  In return, Plaintiffs receive revenues, royalties and other compensation from their ongoing licensing and exploitation of these works.

27.     Plaintiffs receive payments for, among other uses, the distribution and reproduction of its Pre-1972 Recordings, including by offering for sale (directly or though licenses) compact discs and digital music files for download and licensing them for use in motion pictures, television programs and commercials.  The payments that Plaintiffs receive are a main source of revenue used to pay Plaintiffs' ongoing investment and expenses, and to compensate its principals, employees and representatives for their talent and work in creating the Pre-1972 Recordings and for administering and collecting revenue generated by such works.  It is extremely important to Plaintiffs' business that those who make a commercial use of Plaintiffs' Pre-1972 Recordings obtain licenses and pay Plaintiffs for their use of Pre-1972 Recordings.

28.     Plaintiffs commercially distribute and otherwise exploit the Recordings, either directly or through a licensee.

29.     Plaintiffs originally "mastered" the Recordings in the analog format.  To "master" means to take the final mixed sound recording, possibly equalizing the sounds and designate it as the definitive copy to be duplicated for the end user.  With the advent of the digital age, some or all of the Recordings have been "remastered" by mechanically taking the final mix of the sound recording in its analog format and transferring it into a digital format without remixing, resequencing or adding additional sounds.  A remastered recording and the originally mastered recording are identical in the sense that the actual sounds of the artist's performances fixed in the originally mastered recording are the same as the actual sounds of the artist's performances fixed in the remastered recording.  Plaintiffs own all right, title and interest in the Recordings, including without limitation, the Recordings to the extent that they have been remastered at any time into any format.

30.    For some Recordings, Plaintiffs have granted licenses allowing for the inclusion of a Recording on a "compilation album" with other recordings, and further allowing for the distribution of the "compilation album" containing the Recording.  For any such "compilation album," Plaintiffs retain all right, title and interest in the ownership of the Recording on the compilation album, regardless of whether the compilation album uses the originally "mastered" Recording or a "remastererd" Recording in any format or on any medium.

31.    Plaintiffs' ownership of their Recordings, including their originally mastered Recordings, any remastered Recordings, and any Recordings that may be embodied on a "compilation album" (in any format) includes the right to publicly perform the Recordings and the right to exclusively license the public performance of the Recordings, including without limitation public performances originating from the master Recording, any remastered Recording, and as embodied on any compilation album.

32.    Cumulus provides the Broadcast Service to members of the public in New York and elsewhere, and broadcasts sound recordings through numerous radio stations throughout New York, including, without limitation, the following:

(a)    <u>Buffalo</u>:  WEDG – 103.3 FM, Active Rock; WGRF – 96.9 FM, Classic Rock; WHTT – 104.1 FM, Classic Hits;

(b)    <u>New York</u>:  WPLJ – 95.5 FM, Adult Contemporary; WPLJ-HD2, True Oldies; WNSH – 94.7 FM, Country; WNBM – 103.9 FM, urban adult contemporary;

(c)    <u>Syracuse</u>:  WAQX – 95.7 FM, Active Rock; WXTL – 105.9 FM, Classic Rock; WNTQ – 93.1 FM, Mainstream; and

(d)    <u>Westchester</u>: WFAS – 94.3 FM.

Among the sound recordings that Cumulus publicly performs, reproduces and distributes through the Broadcast Service are the Recordings.

33.    The Internet Service is provided by Cumulus to members of the public in New York and elsewhere, and delivers and streams (and licenses others to deliver and stream) music

7

through its stations' websites, and through smart phones and tablets through its downloadable Android and iOS Apps.  Among the sound recordings that Cumulus publicly performs, reproduces, and distributes through the Internet Service are the Recordings.

34.    Cumulus understands that having a vast and complete range and array of music is critical to the success of any music service, which is why Pre-1972 Recordings constitute a significant part of the Music Service.  Through the Internet Service, Cumulus offers and advertises live radio simulcast, which allows a user to select and listen to the live audio simulcast of hundreds of radio stations throughout the United States, inclusive of radio stations owned by Cumulus.  Many of these radio stations are dedicated to Pre-1972 Recordings.  Cumulus promotes these stations in order to establish and increase its user base, popularity, and revenue.

35.    Plaintiffs are informed and believe, and on that basis allege, that in order to populate the Music Service's databases and in order to broadcast and stream musical recordings to the public, Cumulus has, without authorization, reproduced and copied and continues to reproduce and copy Pre-1972 Recordings to one or more servers and storage devices, and uses technology or systems that results in one or more copies of Pre-1972 Recordings being distributed to its users' computers or storage devices.

36.    Cumulus has reproduced, performed, distributed and otherwise exploited via the Music Service the Recordings without Plaintiffs' consent.  Cumulus does not, and knows that it does not, have any license, right or authority to reproduce, perform, distribute or otherwise exploit *via* the Music Service any Pre-1972 Recordings (including the Recordings).  Cumulus also knows which of the recordings its reproduces, performs, distributes or otherwise exploits *via* the Music Service are Pre-1972 Recordings.

37.    Cumulus's entire business is built around selling access to music and selling the music.  Cumulus delivers audio advertisements to its users in between songs and displays (through the Internet Service, including mobile apps) visual ads while music is playing.

38.    Although a significant portion of Cumulus's revenue earned in 2014 is attributable to Pre-1972 Recordings, and though Cumulus capitalizes on its customers' desire to listen to

these recordings, Cumulus has not licensed from Plaintiffs or paid to Plaintiffs any royalties or other compensation.

39.     By its conduct, Cumulus deprives Plaintiffs and the Class of the revenues to which it and members of the Class are entitled.  Cumulus's refusal to pay for its continued use of Pre-1972 Recordings directly contravenes New York law and policy, which always have provided equal, if not greater, rights to owners of sound recordings than the federal Copyright Act.

40.     In 1972, Congress amended the United States Copyright Act to add for the first time "sound recordings" to the list of works protected under federal copyright law.  17 U.S.C. § 102(a)(7).  At the same time, Congress also preserved "any rights or remedies under the common law or statutes of any State" with respect to sound recordings "fixed" before February 15, 1972.  17 U.S.C. § 301(c).  As a result, pre-existing New York protection for Pre-1972 Recordings was left untouched and subject to evolution and refinement by the courts.  Congress initially limited the federal sound recording copyright to include certain of the exclusive rights conferred on other works – namely, the rights of reproduction, adaptation, and distribution – and to exclude the right to publicly perform sound recordings.  New York law has never delimited, either explicitly or implicitly, the scope of common law protection of Pre-1972 Recordings, and did not exclude the right of public performance from the rights of owners in Pre-1972 Recordings.

41.     This broad protection afforded to Pre-1972 Recordings is consistent with the recognition by New York courts of critical, important public policy interests in providing strong state law protection for sound recordings.  These interests include ensuring that record companies receive compensation from their substantial expenditure of effort, skill and money in creating, marketing and exploiting recorded performances, as well as ensuring that the owners of sound recordings possess adequate remedies against those who misappropriate and profit from such performances.  New York's protections for sound recordings thus are complete, providing exclusive ownership and rights in Pre-1972 Recordings that are not limited in any way, and that include any conduct by which individuals or entities seek to unfairly compete and profit from the skill and labor of Plaintiffs by appropriating and exploiting Pre-1972 Recordings for their own

9

benefit, including by unauthorized and unlicensed reproduction and public performance of these recordings.

42.    The need for effective state law protection of Pre-1972 Recordings is especially great today.  Pre-1972 Recordings comprise a significant and important share of the overall body of existing musical recordings, and include some of the most popular and valued recordings in history.

43.    To address the anticipated shift in music consumption habits and the rise of digital radio services and, therefore, the need to provide *federal* protection for the performance of copyrighted sound recordings, Congress passed the Digital Performance Rights in Sound Recordings Act ("DPRA"), granting owners of *post*-72 copyrighted sound recordings the right to "perform the copyrighted work publicly by means of a digital audio transmission."  17 U.S.C. § 106(6).

44.    New York's protection for Pre-1972 Recordings has never been less extensive than federal copyright protection for *post*-72 recordings.  New York had provided common law protection for Pre-1972 Recordings without any exclusions and including the right of public performance.  Those, like Cumulus, who build their business and make money from the copying, reproduction and public performance of Pre-1972 Recordings must obtain the right under New York law to use them and must compensate their owners.

45.    Plaintiffs bring this class action on its own behalf and on behalf of all other similarly situated owners of Pre-1972 Recordings (the "Class" or "Class Members") to put an end to Cumulus's wholesale infringement and misappropriation of their Pre-1972 Recordings and to obtain damages, including punitive damages, and injunctive relief.  Simply stated, Cumulus has disregarded Plaintiffs and the Class's exclusive ownership of their Pre-1972 Recordings in New York, impaired their ability to sell, lawfully exploit, or otherwise control their Pre-1972 Recordings as permitted under New York law and misappropriated same for its own financial gain.  Cumulus's conduct is causing, and will continue to cause, enormous and irreparable harm to Plaintiffs and the Class unless compensatory and punitive damages are

10

awarded against Cumulus and it is enjoined and restrained from engaging in further infringement and misappropriation of the Pre-1972 Recordings.

## CLASS ACTION ALLEGATIONS

46.    Plaintiffs bring this action, pursuant to Fed. R. Civ. P. 23, on behalf of itself individually and on behalf of all other similarly situated owners of Pre-1972 recordings, which recordings were reproduced, performed, distributed or otherwise exploited by Cumulus via the Music Service in New York.  The proposed Class is comprised of and defined as follows:

> All owners of sound recordings of musical performances that initially were "fixed" (*i.e.,* recorded) prior to February 15, 1972, which sound recordings were reproduced, performed, distributed and/or otherwise exploited by Cumulus *via* any form or method of delivery or storage (*e.g.,* terrestrial broadcast, Internet, computer, server, etc.) in New York (the "Class").

47.    This action may be properly brought and maintained as a class action because there is a well-defined community of interest in the litigation and the members of the proposed Class are clearly and easily ascertainable and identifiable.

48.    The Class for whose benefit this action is brought is so numerous and geographically dispersed that joinder of all members of the Class is impracticable.  Plaintiffs are informed and believe that there are hundreds or thousands of members of the Class whose identity can be readily ascertained from third party, music industry sources and from Cumulus's database files and records.  Therefore, the Class can be readily located and notified of this action.

49.    Plaintiffs' claims are typical of the claims of the members of the Class, and Plaintiffs' interests are consistent with and not antagonistic to those of the Class it seeks to represent.  Plaintiffs and all members of the Class have sustained actual pecuniary loss and face irreparable harm arising out of Cumulus's continued course of conduct as complained of herein.

50.    Plaintiffs do not have any interests that are adverse to, or which conflict with, the interests of the absent members of the Class and it is able to fairly and adequately represent and

protect the interests of such Class.  Plaintiffs have raised viable statutory, misappropriation, unfair business practices, and conversion claims of the type reasonably expected to be raised by members of the Class, and will vigorously pursue those claims.  Plaintiffs are represented by experienced, qualified and competent counsel, who are experienced in complex class action commercial litigation, and the legal subject matter of this dispute.  Plaintiffs and their counsel are committed to prosecuting this action vigorously.

51.    Common questions of fact or law exist as to all members of the Class that predominate over any questions affecting only individual members of the Class.  These common legal or factual questions, include but are not limited to, the following:

(A)    Whether Cumulus reproduced, performed, distributed or otherwise exploited Pre-1972 Recordings in New York;

(B)    Whether Cumulus's reproduction, performance, distribution or other exploitation of Pre-1972 Recordings in New York constitutes common law copyright infringement under New York law;

(C)    Whether Cumulus's reproduction, performance, distribution or other exploitation of Pre-1972 Recordings in New York constitutes unfair competition in violation of New York law;

(D)    The basis on which restitution and/or damages to all injured members of the Class can be computed;

(E)    Whether Cumulus's violation of New York common law for copyright infringement entitles the Class to recover punitive damages;

(F)    Whether Cumulus's violation of New York common law for copyright infringement is continuing, thereby entitling Plaintiffs and the Class to injunctive or other equitable relief;

(G)    Whether Cumulus's violation of New York's laws against unfair competition entitles Plaintiffs and the Class to recover punitive damages; and

12

(H)     Whether Cumulus's violation of New York's laws against unfair competition is continuing, thereby entitling Plaintiffs and the Class to injunctive or other relief.

52.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy since individual litigation of the claims of all class members is impracticable.  Thus, for the vast majority of the members of the Class, the expense and burden of individual litigation would not justify pursuing the claims individually.  Even if every member of the Class could afford to pursue individual litigation, the Court system could not.  It would be unduly burdensome to the courts in which individual similar litigation of numerous cases would proceed.  Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action presents few, if any, management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Class.  Plaintiffs do not anticipate any difficulty in the management of this action as a class action.

53.    Defendants have engaged in common law copyright infringement and unfair competition, which has affected all members of the Class such that final and injunctive relief on behalf of the Class as a whole is efficient and appropriate.

## FIRST CLAIM FOR RELIEF

### (For Common Law Copyright Infringement Against All Named Defendants and Does 1-10)

54.    Plaintiffs hereby incorporate the allegations set forth in paragraphs 1 through 53, above, as though set forth in full herein.

55.    The Pre-1972 Recordings are unique intellectual property subject to common law copyright protection under the law of the State of New York.

56.    As the owners of valid common law copyrights or exclusive licensees in and to the Pre-1972 Recordings, Plaintiffs and the Class possess the exclusive rights to reproduce, perform,

distribute or otherwise exploit the Pre-1972 Recordings, and license, or refrain from licensing, others to do so.

57.    Plaintiffs and the Class have not authorized or licensed Defendants to reproduce, perform, distribute or otherwise exploit the Pre-1972 Recordings in any manner.

58.    The distribution, reproduction, performance or other exploitation by Defendants of unauthorized copies of the Pre-1972 Recordings, including, without limitation, the Recordings, constitute infringement of Plaintiffs and the Class's common law copyrights in such recordings and violation of their exclusive rights therein.  Plaintiffs and the Class have invested substantial time and money in the development of their Pre-1972 Recordings.

59.    The Defendants have infringed the copyrights to the Pre-1972 Recordings at little or no cost and without license or authority.  They have copied the Pre-1972 Recordings owned by Plaintiffs and the Class, and distributed and publicly perform these recordings in New York for their listeners and subscribers.  Defendants have disregarded Plaintiffs and the Class's copyrights in and exclusive ownership of their Pre-1972 Recordings, impaired their ability to sell, lawfully exploit, or otherwise control their Pre-1972 Recordings, all for their own financial gain.

60.    As a direct and proximate consequence of Defendants' copyright infringement of the Pre-1972 Recordings, Plaintiffs and the Class have been damaged in an amount that is not as yet fully ascertained but which Plaintiffs is informed and believes, and alleges thereon, exceeds $5,000,000, according to proof.

61.    Plaintiffs are informed and believe, and alleges thereon, that in engaging in the conduct described above, Defendants acted with oppression, fraud and/or malice.  Defendants's conduct has been despicable and undertaken in conscious disregard of Plaintiffs and the Class's rights.  Accordingly, Plaintiffs and the Class are entitled to an award of punitive damages against Defendants in an amount sufficient to punish and make an example of them, according to proof.

62.    Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiffs and the Class great and irreparable injury that cannot fully be

compensated or measured in money, and for which Plaintiffs and the Class have no adequate remedy at law.  Plaintiffs and the Class are entitled to temporary, preliminary and permanent injunctions, prohibiting further violation of Plaintiffs and the Class's rights in and exclusive ownership of their Pre-1972 Recordings in New York.

## SECOND CLAIM FOR RELIEF

### (For Unfair Competition Against All Named Defendants and Does 1-10)

63.    Plaintiffs hereby incorporates the allegations set forth in paragraphs 1 through 53, above, as though set forth herein.

64.    Plaintiffs and the Class's Pre-1972 Recordings are valuable assets to them. Plaintiffs are engaged in the selling and licensing of all forms of distribution, reproduction, performance or other exploitation of its Pre-1972 Recordings, including, without limitation, by selling physical compact discs and digital Phonorecord deliveries and licensing the master use in audio-visual recordings, such as movies and commercials.  From inception, such Pre-1972 Recordings have generated for Plaintiffs millions of dollars in revenues from such selling and licensing activities.

65.    Without a license or payment, Cumulus copies, distributes, reproduces and performs the Pre-1972 Recordings, and allows its listeners and users to listen to Pre-1972 Recordings via terrestrial broadcast or online digital audio transmissions without purchasing or licensing them.

66.    Defendants have not paid anything to Plaintiffs or the Class for distributing, reproducing and performing the Pre-1972 Recordings.  Without expending any time, labor or money of its own, Defendants have simply appropriated the commercial qualities, reputation and salable properties of the Pre-1972 Recordings, including, without limitation the Recordings, by unfairly and directly competing with Plaintiffs and the Class's use, sale, distribution and exploitation of the Pre-1972 Recordings.  In so doing, Defendants have undermined Plaintiffs and the Class's substantial creative and financial investment for Defendants' own commercial benefit.

67.     Defendants have usurped for themselves the fruits of Plaintiffs and the Class's financial and creative investments.  Defendants are profiting from the results of Plaintiffs and the Class's expenditures and skill without having to incur any expense or risk of its own in relation to the Pre-1972 Recordings.  Furthermore, Defendants' unauthorized use of the Pre-1972 Recordings is likely to cause confusion, mistake or deception as to the source, sponsorship, affiliation or connection between Plaintiffs and the Class, and Defendants.

68.     Through its marketing, selling and licensing activities, Plaintiffs are in the business of exploiting its Pre-1972 Recordings for Plaintiffs' commercial gain.  Through marketing and operating the Music Service, Defendants are using and exploiting the Pre-1972 Recordings without license or payment for Defendants' financial gain and commercial advantage.  Defendants' copying, distribution, reproduction and performance of Pre-1972 Recordings through the Music Service compete with Plaintiffs in several ways.  First, Defendants copying, distribution, reproduction and performance of the Pre-1972 Recordings without a license and without payment place a significant, unfair and anticompetitive downward pressure on the licensing fees Plaintiffs are able to charge consumers or other services in the marketplace who do license and pay for such rights from Plaintiffs, resulting in a direct financial loss to Plaintiffs.  Second, as broadcasts and digital transmissions are substituting over time for sales of sound recordings, Defendants are diverting to themselves income Plaintiffs would have otherwise collected from sales of Plaintiffs' Pre-1972 Recordings, resulting in Defendants' obtaining business that rightfully belongs to Plaintiffs, and lost dealings and lost profits to Plaintiffs from Defendants' anticompetitive acts.  Such actions by Defendants are designed for their commercial benefit to the detriment of Plaintiffs and the Class.  As a result, Plaintiffs and the Class have been harmed by lost license fees and lost sales.

69.     Defendants' acts constitute a misappropriation of Plaintiffs and the Class's property and rights in and to the Pre-1972 Recordings, and constitute misappropriation and unfair competition under New York law.

16

70.     As a direct and proximate result of Defendants' misappropriation and unfair competition, Plaintiffs and the Class are entitled to recover all proceeds and other compensation received or to be received by Defendants from their misappropriation and unfair competition of the Pre-1972 Recordings.  Plaintiffs and the Class have been damaged, and Defendants have been unjustly enriched, in an amount that is not as yet fully ascertained but which Plaintiffs are informed and believe, and allege thereon, exceeds $5,000,000, according to proof at trial.  Such damages and/or restitution and disgorgement should include a declaration by this Court that Defendants are constructive trustees for the benefit of Plaintiffs and the Class, and an order that Defendants convey to Plaintiffs and the Class the gross receipts received or to be received that are attributable to Defendants misappropriation of the Pre-1972 Recordings.

71.     Plaintiffs are informed and believe, and allege thereon, that by engaging in the conduct as described above, Defendants acted with oppression, fraud and/or malice.  Defendants' conduct has been despicable and undertaken in conscious disregard of Plaintiffs and the Class's rights.  Accordingly, Plaintiffs and the Class are entitled to an award of punitive damages against Defendants, and each of them, in an amount sufficient to punish and make an example of them according to proof at trial.

72.     Defendants' conduct is causing, and unless enjoined and restrained by this Court, will continue to cause, Plaintiffs and the Class great and irreparable injury that cannot fully be compensated or measured in money.  Plaintiffs and the Class are entitled to temporary, preliminary and permanent injunctions, prohibiting further violation of Plaintiffs and the Class's right to exclusive ownership of their Pre-1972 Recordings and further acts of unfair competition and misappropriation.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the Class, pray for Judgment against Defendants, and each of them, as follows:

**Regarding the Class Action:**

1. That this is a proper class action maintainable pursuant to the applicable provisions of the Federal Rules of Civil Procedure; and

2. That the named Plaintiffs are adequate to represent the Class and should be appointed representative of the Class and their counsel be appointed as Class Counsel.

**On The First Claim For Relief For Common Law Copyright Infringement against all Defendants:**

1. For compensatory damages in excess of $5,000,000 according to proof at trial;

2. Punitive and exemplary damages according to proof trial; and

3. A temporary, preliminary, and permanent injunction enjoining and restraining Defendants, and their respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliated companies, successors, assigns, and those acting in concert with them or at their direction, from directly or indirectly infringing the copyrights in the Pre-1972 Recordings in New York in any manner, including without limitation by directly or indirectly copying, reproducing, downloading, distributing, communicating to the public, uploading, linking to, transmitting, publicly performing, or otherwise exploiting in any manner any of the Pre-1972 Recordings.

**On The Second Claim For Relief For Unfair Competition against all Defendants:**

1. For compensatory damages in excess of $5,000,000 according to proof at trial;

2. Punitive and exemplary damages according to proof at trial;

3. Imposition of a constructive trust;

4. Restitution of Defendants' unlawful proceeds, including Defendants' gross profits; and

5. A temporary, preliminary, and permanent injunction enjoining and restraining Defendants, and their respective agents, servants, directors, officers, principals, employees, representatives, subsidiaries and affiliated companies, successors, assigns, and those acting in concert with them or at their direction, from directly or indirectly misappropriating in any manner the Pre-1972 Recordings, including without limitation by

directly or indirectly copying, reproducing, downloading, distributing, communicating to the public, uploading, linking to, transmitting, publicly performing, or otherwise exploiting in any manner any of the Pre-1972 Recordings.

**On All Causes of Action:**

1. For reasonable attorneys' fees and costs as permitted by law;

2. For prejudgement interest at the legal rate; and

3. For such other and further relief as the Court deems just and proper.

DATED:  OCTOBER 30, 2015          **MILLER LAW LLC**
                                  **McKOOL SMITH HENNIGAN, P.C.**

By:  /s/ Marvin A. Miller
     Marvin A. Miller

     MILLER LAW LLC
     MARVIN A. MILLER
     mmiller@millerlawllc.com
     ANDREW SZOT (admitted *pro hac vice*)
     aszot@millerlawllc.com
     KATHLEEN E. BOYCHUCK (admitted *pro hac vice*)
     kboychuck@millerlawllc.com
     115 S. LaSalle Street, Suite 2910
     Chicago, IL 60603
     T:  (312) 332-3400; F:  (312) 676-2676

By:  /s/ Robert E. Allen
     Robert E. Allen

     McKOOL SMITH HENNIGAN, P.C.
     RODERICK G. DORMAN (admitted *pro hac vice*)
     rdorman@mckoolsmithhennigan.com
     ROBERT E. ALLEN (admitted *pro hac vice*)
     rallen@mckoolsmithhennigan.com
     LAWRENCE M. HADLEY (admitted *pro hac vice*)
     lhadley@mckoolsmithhennigan.com
     ALAN P. BLOCK (admitted *pro hac vice*)
     ablock@mckoolsmithhennigan.com
     865 S. Figueroa St., Suite 2900
     Los Angeles, CA 90017
     T:  (213) 694-1200; F:  (213) 694-1234

*Attorneys for Plaintiffs*
ABS ENTERTAINMENT, INC., BARNABY
RECORDS, INC., BRUNSWICK RECORD
CORPORATION and MALACO, INC.

## DEMAND FOR JURY TRIAL

Pursuant to the Federal Rules of Civil Procedure, Rule 38(b), Plaintiffs, ABS

ENTERTAINMENT, INC., BARNABY RECORDS, INC., BRUNSWICK RECORD

CORPORATION and MALACO, INC., hereby demand a jury trial on all issues so triable.

DATED:  OCTOBER 30, 2015     **MILLER LAW LLC**
**McKOOL SMITH HENNIGAN, P.C.**

By:  /s/ Marvin A. Miller
Marvin A. Miller

MILLER LAW LLC
MARVIN A. MILLER
mmiller@millerlawllc.com
ANDREW SZOT (admitted *pro hac vice*)
aszot@millerlawllc.com
KATHLEEN E. BOYCHUCK (admitted *pro hac vice*)
kboychuck@millerlawllc.com
115 S. LaSalle Street, Suite 2910
Chicago, IL 60603
T:  (312) 332-3400; F:  (312) 676-2676

By:  /s/ Robert E. Allen
Robert E. Allen

McKOOL SMITH HENNIGAN, P.C.
RODERICK G. DORMAN (admitted *pro hac vice*)
rdorman@mckoolsmithhennigan.com
ROBERT E. ALLEN (admitted *pro hac vice*)
rallen@mckoolsmithhennigan.com
LAWRENCE M. HADLEY (admitted *pro hac vice*)
lhadley@mckoolsmithhennigan.com
ALAN P. BLOCK (admitted *pro hac vice*)
ablock@mckoolsmithhennigan.com
865 S. Figueroa St., Suite 2900
Los Angeles, CA 90017
T:  (213) 694-1200; F:  (213) 694-1234

*Attorneys for Plaintiffs*
ABS ENTERTAINMENT, INC., BARNABY
RECORDS, INC., BRUNSWICK RECORD
CORPORATION and MALACO, INC.